CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KEVIN YEH (CABN 314079)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    (415) 436-7063
    kevin.yeh@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO. 4:25-cr-156 HSG** |
|     Plaintiff, | ) |
| | ) **UNITED STATES' MEMORANDUM IN** |
|   v. | ) **SUPPORT OF DETENTION** |
| | ) |
| DONALD YOUNG, | ) Date:  June 23, 2025 |
| | ) Time:  10:30 a.m. |
|     Defendant. | ) Court:  Hon. Alex G. Tse |
| | ) |

## **INTRODUCTION**

Donald Young, a firearm and drug trafficker, is unable—or unwilling—to follow the law, and his chronic inability to do so renders him unable to overcome the presumption that no conditions can reasonably assure the safety of the community or that he will comply with this Court's orders.  He has had at least nine convictions, including for felony drug trafficking, evading a peace officer/disregarding safety, threatening a crime with intent to terrorize, and battery.  His most recent conviction was just two months ago, on April 21, 2025, for which he was sentenced to two days in jail and two years of probation.  He has had his probation revoked or his probation term or sentence modified approximately 11 times.

While Mr. Young suffers from various health problems, for which the government is

U.S.' Detention Mem.            1
4:25-cr-156 HSG

sympathetic, he has not allowed those conditions to slow down his criminal activity.  Indeed, as recently as June 13, 2025, while still on probation for his April 2025 conviction, Young arranged to sell cocaine to an undercover agent.

Furthermore, when he was arrested on June 17, 2025, agents found Young—a felon—with five firearms (at least four of which were loaded) and over *a thousand* rounds of ammunition in his home. Agents also found heroin and cocaine, and reported that he did not comply with their instructions during his arrest.

His chosen lifestyle—including keeping loaded guns in his home and selling fentanyl, methamphetamine, and guns—poses a danger to the community, and his lengthy sentencing exposure (which the government currently calculates to be 210–262 months, not accounting for any potential superseding charges) creates a significant risk that he might flee.  The government therefore agrees with Pretrial Services that Young should be detained pending trial.

## **BACKGROUND**

On October 6, 2023, Young sold 200 fentanyl pills for $400 to a confidential informant ("CI"). The final weight of the estimated pills was 20.317 grams net and tested positive for fentanyl and para-fluorofentanyl, a Schedule I fentanyl analogue.

On April 30, 2024, Young sold one pound of methamphetamine for $1,000 to a CI.  The final weight of the drugs was 413.6 net grams and tested positive for methamphetamine.

On July 25, 2024, the Honorable Rita F. Lin, United States District Judge, authorized the interception of wire communications over Young's phone for a 30-day period.

On August 11, 2024, agents intercepted a call from co-defendant Kendal Foster offering Young an assault rifle-style firearm for $1,500.  Young indicated he would buy it.  To prevent the gun from "walking," agents instructed the CI to reach out to Young to arrange to buy a firearm.  On August 13, Young facilitated the sale of the firearm from Foster to the CI, and delivered the gun from his home.

On August 15, 2024, agents intercepted another call from Foster to Young in which Foster asked Young to inquire if the CI wanted to purchase another firearm for $900.  Again, to prevent the gun from "walking," the CI called Young to ask if he had access to more guns.  Young responded that he could get one, and eventually facilitated another sale of a 9mm gun for $900 from Foster to the CI.  Agents

later determined that the gun was reported stolen.

During the first round of wiretaps on Young's phone, agents intercepted numerous calls between Young and co-defendant Jerardo Mendez Zaragoza during which they discussed drug trafficking.  It appeared that Zaragoza was one of Young's drug suppliers.  Agents also became aware of Demarco Riley, who appears to be a courier for Zaragoza.

On November 13, 2024, Judge Lin authorized the interception of wire and electronic communications over Young's phone, and wire communications over Riley's phone for a 30-day period.  Over the course of the two intercepts, agents concluded that Young was a prolific drug dealer who had customers coming to his home to purchase drugs throughout the day, and that he conspired with multiple individuals—including Zaragoza and Riley—to traffic narcotics.

On June 13, 2025, while still on probation for his April 2025 conviction, Young arranged to sell cocaine to an undercover agent from his home.

When he was arrested and his home searched, agents found five firearms (four of which were loaded) and over a thousand rounds of ammunition throughout his home.  They also found approximately 78.2 grams of black tar heroin, 42.4 grams of other heroin, and 52.4 grams of cocaine, as well as 50.08 grams of a white crystalline substance (possibly crystal methamphetamine.

## LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a serious flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  *Id.*  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id.*  The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated

U.S.' Detention Mem.          3
4:25-cr-156 HSG

in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where, as here, there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this presumption, the burden of production shifts to the defendant. *United States v. Hir*, 517 F. 3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, however, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighed along with other relevant factors. *Id.*

## **ARGUMENT**

Because Young is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, he bears the burden of rebutting the presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

Young has shown himself time and again to be a danger to the community. He has a lengthy criminal history stretching back four decades and encompassing approximately nine convictions, including one as recently as April 2025. Notably, in August 2016, he was sentenced to a five-year term of imprisonment for drug offenses, as well as evading a peace officer and disregarding public safety. By 2021, he was sentenced to another two years in prison for, among other things, being a felon in possession of a firearm.

Young has shown that he cannot stay out of trouble even after being released from

U.S.' Detention Mem.                                        4
4:25-cr-156 HSG

imprisonment. He appears to have had his probation revoked or his probation term or sentence modified approximately 11 times. Indeed, he was on probation while he was charged in this matter, and it appears that his criminal conduct continued right up to when he was arrested, as he had arranged to sell cocaine to an undercover agent just 10 days ago, on June 13, 2024.

Young's drug trafficking—of fentanyl, methamphetamine, and cocaine—is danger enough to the community. But he also traffics in guns, including selling them to a CI without the slightest concern about what the CI might do with the guns they bought. Of course, as a felon multiple times over (including a conviction for being a felon in possession of a firearm), Young was not even supposed to possess any firearms to begin with, but that did not dissuade him from trafficking in them. Indeed, when he was arrested, Young was found with no fewer than *five* firearms: one Beretta 9mm pistol; one Taurus pistol PT 745 pro; one Zastava firearm; one Palmetto armory AR-15; and one Palmetto AR rifle. Four of these guns were *loaded*, and agents also found an astonishing amount of ammunition strewn throughout his home—over *a thousand* of them.

Young has shown that he is an unrepentant and serial offender, one who cannot play by the rules. Even while on probation after serving a two-year jail term, he has managed to stash multiple types of drugs and loaded guns in his house, *and* continues to sell drugs. And he has admitted to Pretrial that he uses amphetamines daily up until his arrest—likely in violation of his probation conditions. If history is a guide, there is a serious risk that he will not comply with this Court's conditions of release. His high sentencing exposure—the government calculates his Guidelines range to be 210–262 months—raises the real possibility that he might fail to appear to answer his charges if released. And this range does not even account for potential superseding charges, which would only increase his Guidelines range.

The government does not believe that any proposed surety would be sufficient to ameliorate the risk of danger or flight that Young poses. For the reasons stated in the Pretrial Services report, the government has serious concerns about the one proposed surety's fitness to serve as such, and it is telling that Mr. Young's wife is unwilling to assist with bail.

The government also does not believe that Young's health condition or age weighs in favor of release. They certainly did not dissuade or prevent him from continuing with his criminal conduct. More importantly, Mr. Young was medically screened after his arrest and determined to be sufficiently

U.S.' Detention Mem.                                      5
4:25-cr-156 HSG

fit to be placed in custody, and presumably Santa Rita jail would be able to accommodate Young's conditions since they accepted him.

### CONCLUSION

The government agrees with Pretrial Services that Young poses a danger to the community and a risk of non-appearance, neither of which can be reasonably mitigated by a combination of release conditions.  Because he fails to overcome the presumption in favor of detention, the Court should grant the government's motion to detain Young pending trial.

DATED: June 23, 2025                                      Respectfully submitted,

                                                         CRAIG H. MISSAKIAN
                                                         United States Attorney


                                                         _____/s/_____

                                                         KEVIN YEH
                                                         Assistant United States Attorney