JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
ANAIS CARELL, Bar No. 354346
Fellowship Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:    (510) 637-3500
Facsimile:    (510) 637-3507
Email:        Anais_Carell@fd.org

Counsel for Defendant Young

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD YOUNG,<br><br>Defendant. | **Case No.:** CR 25–00156 YGR (AGT)<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF RELEASE**<br><br>**Hearing Date:**    July 1, 2025<br>**Hearing Time:**    10:00 a.m. |

The defense submits this memorandum in support of its request for Donald Young's release. On June 17, 2025, Mr. Young had his initial appearance on a federal Indictment charging him with: one count of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C); one count of Distribution of 10 Grams or More of a Mixture and Substance Containing a Fentanyl Analogue, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi); one count of Distribution of 5 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii); and two counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1). Dkts. 1, 7. This Court held a first detention hearing on June 23, 2025, and it set a further detention hearing for June 27, 2025. Dkt. 27.

The further detention hearing was rescheduled to July 1, 2025. Dkt. 52.

The defense submits this memorandum to provide information to the Court that will reasonably assure the protection of the community and mitigate concerns regarding danger.

**I.    Restrictive proposed release conditions, including location monitoring and a custodian, rebut the Bail Reform Act's presumption of detention**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act ("BRA") statute states a judge "shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court." 18 U.S.C. § 3142(b). Where the judge finds release on either of the two conditions above "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," *still* the "judicial officer *shall* order the pretrial release of the person . . . subject to the least restrictive further condition, or combination of conditions." 18 U.S.C. § 3142(c)(1), (c)(1)(B).

While drug offenses of the type with which Mr. Young is charged carry a rebuttable presumption of detention, a defendant's burden of production "is not heavy." 18 U.S.C. §§ 3142(e), (f). *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991)). A defendant need only introduce "some evidence" that he does not pose a danger to the community or a risk of flight. *See id.*

The availability of location monitoring, sureties, or custodians is sufficient to overcome the presumption of detention. *See United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990) (finding that the use of an electronic bracelet is a factor that can rebut the presumption of detention, especially in combination with the availability of a surety); *Stone*, 608 F.3d at 947 (holding that the defendant rebutted the presumption of dangerousness by "produc[ing] a third-party custodian" in a seditious-conspiracy and weapons of mass destruction case). Here, Mr. Young presents all three. The proposed release conditions include home detention on location monitoring, with permission to leave his residence only for medical appointments, legal appointments, court hearings, and other activities approved by this Court. He has multiple sureties willing to co-sign an unsecured bond, including: his

sister, Yolanda Lee, who is employed as an operator of a mental-health-crisis hotline and owns a business that provides care for disabled adults; and his son, Rafell Young, who will reside with Mr. Young upon release. *See* Dkt. 22 ["Pretrial Bail Report"] at 1; Dkt. 47 ["Pretrial Addendum"] at 2-3. Finally, Rafell Young is willing to serve as his father's third-party custodian. Rafell would move in with Mr. Young upon his release and would ensure that Mr. Young violates no conditions of his pretrial release.[1] Though Rafell worked as a truck driver in Stockton until the beginning of 2025, he recently moved to Oakland to be closer to his ailing father and is not currently employed. As such, he is available to monitor Mr. Young at nearly all hours. Together, Mr. Young's sureties and custodian, and his consent to location monitoring, rebut the presumption of detention.

Regardless of whether the presumption of detention applies, it remains "the government's ultimate burden to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Stone*, 608 F.3d at 946. The government does not meet that burden as to either factor.

## II. Mr. Young presents no risk of flight because he has no history of failures to appear, no history of travel, and is a lifelong Oakland resident

Mr. Young understands that this Court is primarily concerned with the safety of the community. However, because the government has moved for detention based in part on flight risk, and because the Pretrial Bail Report recommends detention based in part on Mr. Young's risk of non-appearance, Mr. Young briefly discusses that factor here. *See* Dkt. 24 ["Gov. Memo"] at 2; Pretrial Bail Report at 15.

"On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). The government must show a "serious risk of flight": namely, "a great risk – beyond average – that the defendant will intentionally and actively move within or

---

[1] At the first detention hearing, defense counsel proffered that Rafell Young recently moved in with Mr. Young. Upon further conversation with Rafell Young and Mario Young, defense counsel became aware that Rafell did not live in the same house as Mr. Young but lived nearby in a separate home with his nineteen-year-old son. Rafell visited Mr. Young occasionally to provide him assistance around the house and help with his medical needs. If Mr. Young were released, Rafell is prepared to move into Mr. Young's home.

outside the jurisdiction to avoid court proceedings in supervision." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (9th Cir. 2023). In evaluating risk of flight, a court takes into account factors including the history and characteristics of the defendant, family ties, financial resources, length of residence in the community, community ties, past conduct, criminal history, and record concerning appearance at court proceedings. *See United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985) (citing 18 U.S.C. § 3142(g)).

Mr. Young poses no, let alone a serious, risk of flight. While the Pretrial Bail Report indicates a history of past convictions, it also shows that Mr. Young has no prior failures to appear for court proceedings. *See* Pretrial Bail Report at 5-14. Mr. Young has spent his entire life in Oakland. *See id.* at 1. He has spent the past three years at the same address. *Id. Compare United States v. Hayes*, 2013 WL 2181671, at *3 (N.D. Cal. May 20, 2013) (finding that aggravating factors as to flight risk include previous failures to appear in court and a lack of stable residence history). He has no passport and no history of travel outside of the country. Pretrial Bail Report at 3. *See Hayes*, 2013 WL 2181671, at *3 (finding that mitigating factors as to flight risk include long-time ties to the district, lack of passport, and lack of international travel). His entire family lives in the Bay Area, including his four living siblings, his three children, and his wife (from whom he is currently separated). *See* Pretrail Bail Report at 1, 3. His ability to travel is hampered both by his physical ailments, including Type 2 diabetes and neuropathy, and his lack of financial resources. *See id.* at 4. He is simply not a flight risk.

## III. Strict release conditions will reasonably assure the safety of the community upon Mr. Young's release

Mr. Young is proposing extraordinarily strict release conditions, which will reasonably assure the safety of the community. A court may only detain a defendant where "the [g]overnment shows by clear and convincing evidence that ***no*** release condition will reasonably assure the safety of the community." *United States v. Parodi*, 2008 WL 683421, at *2 (N.D. Cal. Mar. 7, 2008) (emphasis added). Specifically, "detention may be ordered where the court find ***no condition or combination of conditions*** could prevent the defendant's continued or future criminal activity." *Id.* (citing *Salerno*, 481 U.S. at 739) (emphasis added).

DEFENDANT'S MEMO IN SUPPORT OF RELEASE
*YOUNG*, CR 25–00156 YGR (AGT)

4

Here, Mr. Young proposes that he be placed on home detention with location monitoring, with permission to leave his residence only for medical appointments, legal appointments, court hearings, and other activities pre-approved by this Court. He would live with his son, Rafell Young, who would serve as his third-party custodian and agree to report any violations of pretrial conditions to this Court. Rafell is not currently employed, and he could monitor Mr. Young at nearly all hours of the day.[2] Mr. Young would also report weekly by telephone to Pretrial Services, to keep his officer appraised of his whereabouts and appointments. He would be subject to random visits by his pretrial officer. His bond would be signed by two separate sureties: his son Rafell and his sister Yolanda. Yolanda is an especially strong surety. She owns a home in Oakland, runs a small business, is employed with a mental-health-crisis hotline, and speaks with Mr. Young every week. These strict conditions are more than sufficient to reasonably ensure the safety of the community. *See, e.g., United States v. Cross*, 389 F. Supp. 3d 140, 142 (D. Mass. 2019) (finding that very strict conditions, including constant supervision by a third-party custodian and home detention with location monitoring, reasonably ensured community safety even though the "charges against the defendant [were] horrendous in nature"); *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991) (finding that a set of "innovative and extensive" conditions of release, amounting to "pre-trial house arrest," were sufficient to mitigate danger to the community in a Mafia RICO case); *United States v. Miller*, 2018 WL 6977619, at *8 (S.D. Fla. Dec. 13, 2018) ("The electronic monitoring and home detention ameliorate the risk that the Defendant will personally obtain or distribute drugs.").

Mr. Young understands that the government has proffered concerning information regarding his conduct while on Alameda County probation. *See* Gov. Memo at 5. However, the proposed conditions of release represent significant new restrictions, above and beyond Mr. Young's conditions of state probation. On state probation, Mr. Young was not subject to location monitoring, nor was he residing with or being monitored by a third-party custodian. He was not subject to visits

---

[2] Should this Court find that Rafell Young is not a suitable custodian, Mr. Young renews his request for release to lockdown at the Residential Reentry Center ("RRC") in Oakland or San Francisco. Though Mr. Young recognizes that the RRC is not the equivalent of custody, his movements and location would be constantly monitored using an ankle bracelet, and his activities would be further supervised by RRC staff. Release to the RRC would remove him from the environment in which the alleged offense occurred. It would also allow him to access needed medical care, as discussed later.

or check-ins with federal Pretrial Services, which has more supervision resources available than state probation. In fact, this case appears to be Mr. Young's first encounter with the resources and monitoring of federal supervision.

Moreover, the government must demonstrate that Mr. Young *actually* poses a danger, not that he poses a danger in theory. *See Patriarca*, 948 F.2d at 792; *United States v. Marquez*, 2018 WL 4773152, at *3 (N.D. Cal. Oct. 3, 2018) (finding that a gun sale defendant no longer posed a danger because the guns were seized); *Miller*, 2018 WL 6977619, at *8 (holding that once a drug dealer was arrested, other drug dealers avoided her). Here, all alleged contraband and weapons have been confiscated from Mr. Young's residence. *See* Gov. Memo at 5. It is unrealistic to suspect that Mr. Young will deal drugs or obtain weapons while he is: supervised by federal Pretrial Services; under investigation by federal agents; monitored by a third-party custodian; on location monitoring and home detention; and subject to an ongoing federal criminal case. The proposed strict release conditions therefore reasonably assure the safety of the community.

## IV.    Mr. Young's diabetic retinopathy requires continued, specialized treatment

At the first detention hearing, defense counsel proffered information about Mr. Young's serious medical conditions, including complications from Type 2 diabetes, neuropathy which impedes his mobility, and various medications he must take daily. But Mr. Young's most pressing concern is his proliferative diabetic retinopathy, a condition for which he receives Avastin injections in his eyes every few weeks. *See* Sealed Exhibit A at 2. Proliferative retinopathy is an "advanced stage [of retinopathy] where abnormal new blood vessels grow on the surface of the retina." Mira Sachdeva M.D., Ph.D., *Diabetic Retinopathy*, Johns Hopkins Medicine, available at: https://www.hopkinsmedicine.org/health/conditions-and-diseases/diabetes/diabetic-retinopathy#:~:text=Proliferative%20retinopathy%20is%20the%20advanced,retinopathy%20typicall y%20requires%20urgent%20treatment. The condition can cause "severe vision loss" and requires "urgent treatment." *Id.*

Medical records obtained by defense counsel demonstrate that Mr. Young has been receiving these injections since at least March 2023. *See* Sealed Ex. A at 55. The injections are administered by an ophthalmologist and risk complications, including blindness, retinal detachment, and

endophthalmitis, if performed improperly. *See id.* at 3. They also require topical anesthesia. *See id.* While defense counsel has not yet received information on whether this procedure can be provided in custody, it is clear from the medical records and literature that the injections are specialized, carry risks, and that failure to receive the injections could severely and permanently impair Mr. Young's vision.[3]

Whether Mr. Young can obtain adequate medical care is a factor to be considered during detention proceedings. *See, e.g., United States v. Terrone*, 454 F. Supp. 3d 1009, 1017 (D. Nev. 2020) ("Courts may consider the defendant's physical ailments as a mitigating factor regarding the danger the defendant poses to society.") (citing *United States v. Adams*, 2019 WL 30370432, at *2 (D. Ore. Jul. 10, 2019)); *United States v. Bencomo-Chacon*, 2007 WL 2021850, at *3 (D. Colo. Jul. 11, 2007) ("[T]he failure to provide needed treatment is a factor the Court may consider in conjunction with the continuance of the Defendant's detention."); *United States v. Ramirez-Robles*, 2007 WL 2021852, at *2 (D. Colo. Jul. 11, 2007) ("Among the factors the Magistrate Judge was required to consider was the Defendant's physical condition."). Even presumptively dangerous defendants may be released when they produce evidence of an extraordinary medical condition that the jail cannot treat, and they further show that the safety of the community may be reasonably assured through conditions of release. *See Terrone*, 454 F. Supp. 3d at 1017. Mr. Young has met both requirements. He has an extraordinary eye condition which, left untreated, may result in blindness and which requires regular procedures performed by an ophthalmologist. He has proposed very strict conditions of release which, as discussed above, mitigate danger to the community. As such, Mr. Young should be released.

## V.   Conclusion

Home detention at his long-time residence, watched by a custodian, and monitored by multiple sureties and Pretrial Services, would provide a safe and supervised release plan for Mr. Young. The release plan would also allow him to access much-needed medical care for his serious retinopathy.

---

[3] Defense counsel has reached out to the United States Marshals Service to understand whether San Francisco County Jail, where Mr. Young is currently housed, is able to provide these injections. Copies of medical records have also been provided to the government.

DEFENDANT'S MEMO IN SUPPORT OF RELEASE
*YOUNG*, CR 25–00156 YGR (AGT)

The defense respectfully requests that the Court grant Mr. Young's release in accordance with the BRA.

Dated:    June 30, 2025                          Respectfully submitted,

                                                 JODI LINKER
                                                 Federal Public Defender
                                                 Northern District of California

                                                           /S
                                                 ANAIS CARELL
                                                 Fellowship Assistant Federal Public Defender